IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

J.M., et al.

        Plaintiff,

      v.

OREGON YOUTH AUTHORITY, et al.

        Defendants.

Case No. 3:25-cv-1866-MC

OPINION AND ORDER

MCSHANE, Judge:

Defendants Marcia Adams, Karen Brazeau, Robert Jester, Bobby Mink, Colette Peters, Gary Lawhead, Mike Conzoner, Darin Humphreys, and Isidro Thompson, move to dismiss Count I, pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss 2, ECF No. 12. Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' Section 1983 claims are timely. Defendants' Motion to Dismiss, ECF No. 12, is **DENIED**.

### **BACKGROUND**[1]

Plaintiffs, adults formerly incarcerated in the Oregon Youth Authority (OYA), allege that they were sexually abused by a MacLaren Correctional Facility pediatrician, Edward Gary Edwards, while in OYA custody. Compl. 12-16. Plaintiff J.M. was committed to OYA in 2001, when he was 13 years old. *Id.* at ¶ 46. While Plaintiff was placed at MacLaren, between 2001 and 2003, "Edwards fondled J.M.'s penis and penetrated J.M.'s rectum during various medical

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiffs' allegations as true. See *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

1 – Opinion and Order

exams." *Id.* at ¶ 47. J.M. "thought something was wrong and alerted staff." *Id.* at ¶ 48. MacLaren staff "told J.M. that Edwards knew what he was doing and took no other action . . . communicat[ing] to J.M. that Edwards's conduct constituted appropriate medical care." *Id.* at ¶ 49. J.M. realized Edwards's conduct was abusive only in March of 2025, after learning of other Edwards's other victims in news stories. *Id.* at ¶ 50. J.M. only became "aware of O.Y.A.'s tortious conduct of knowing and allowing Edwards's abuse to continue for decades" in March of 2025. *Id.* at ¶ 51. It was at that time "that J.M. realized his struggles with addition were related to Edwards's abusive conduct." *Id.* at ¶ 52.

OYA placed Plaintiff M.P. at MacLaren in 2002, when he was 16 years old. *Id.* at ¶ 53. "During an intake physical examination, Edwards pulled M.P.'s pants down and, without gloves, fondled M.P.'s penis and testicles." *Id.* at ¶ 54. M.P. thought that Edwards's actions were "part of a normal medical examination" and not abusive, because of Edwards's continued employment at MacLaren and "because [M.P.] believed OYA was required to and would protect incarcerated youth." *Id.* at ¶ 55–56. M.P. "realized that Edwards['s] conduct was not part of normal medical care" only "when he learned of Edwards's other victims." *Id.* at ¶ 57. M.P. alleges he suffers emotional distress as a result of Edwards's abuse. *Id.* at ¶ 59.

OYA placed Plaintiff J.L. at MacLaren in 2005, when he was 13 years old. *Id.* at ¶ 60. "During an intake physical examination, Edwards fondled J.L.'s penis and testicles and put his finger inside J.L.'s rectum." *Id.* at ¶ 61. J.L. was "extremely confused by Edwards's conduct." *Id.* at ¶ 62. Edwards told J.L. that neither of them could discuss the examination, due to doctor-patient privilege. *Id.* at ¶ 63. Only "recently" after seeing a news story about Edwards's alleged abuse, did J.L. realize that he was abused and that "OYA could have prevented or stopped the abuse." *Id.* at ¶ 64. J.L. experienced emotional distress as a result of Edwards's abuse. *Id.* at ¶ 65.

OYA placed Plaintiff C.I. at MacLaren in 2005, when he was 16 years old. *Id.* at ¶ 66. C.I. was housed at MacLaren through 2006. *Id.* at ¶ 67. During his placement at MacLaren, C.I. was examined by Edwards multiple times. *Id.* In those examinations, "Edwards fondled C.I.'s testicles and penis," while making "various excuses for the invasive examinations." *Id.* at ¶ 67. C.I. questioned staff regarding his interactions with Edwards and they told C.I. that "the doctor knew what he was doing." *Id.* at ¶ 68. C.I. realized Edwards's conduct was abusive only in 2025, after learning of "the extent of Edwards'[s] abuse through news stories." *Id.* at ¶ 69. It was only at this time that C.I. understood "such abuse had been going on for years under OYA leadership's watch." *Id.* C.I. suggests Edwards's abuse contributed to his struggles with his mental health, including his experience of posttraumatic stress disorder. *Id.* at ¶ 70.

Plaintiff G.S. was abused by Edwards twice, between ages 14 and 15. *Id.* at ¶ 71–72. G.S. was placed at MacLaren in 2011 and 2012. *Id.* at ¶ 71. "On one occasion, Edwards fondled G.S.'s penis.  On another, he inserted his finger into G.S.'s rectum." *Id.* at ¶ 72. Due to the medical setting of the incidents, G.S. "did not recognize Edwards's conduct as abuse." *Id.* at ¶ 73. G.S. did not learn Edwards's actions were sexual abuse, rather than medical care, until March 2025, when he was exposed to "the extent of Edwards's abuse through widespread news accounts." *Id.* at ¶ 74. It was in March of 2025 that "G.S. learned that OYA administrators and staff had received complaints about Edwards and failed to investigate or take steps to remedy the situation." *Id.* at ¶ 75. G.S.'s abuse had a deleterious effect on his physical and emotional wellness. *Id.* at ¶ 76.

Plaintiff J.E. was placed by OYA at MacLaren in 2012, at the age of 14. *Id.* at ¶ 77. "During [his] initial physical examination at MacLaren, Edwards pulled down J.E.'s pants, and, without gloves, started touching J.E.'s genitals, rubbing his testicles, and stroking his penis until

J.E. had an erection." *Id.* at ¶ 78. J.E. felt "uncomfortable, confused, and anxious about his sexuality" after the examination. *Id.* at ¶ 79. "Recently, after seeing news about Edwards's decades-long abuse, J.E. began to understand Edwards's conduct was abusive . . . [and] that OYA could have and should have stopped the abuse." *Id.* at ¶ 81. J.E.'s abuse contributed to his "emotional distress issues." *Id.* at ¶ 82.

In their October 2025 complaint, Plaintiffs allege three counts against OYA and numerous current and former OYA employees. *Id.* at 4-6, 16-19. Except for Defendant Adams, all defendants are former directors of OYA and former superintendents at MacLaren. *Id.* at ¶ 7-14. Adams has served as OYA's assistant director of health services and supervising physician but serves currently as OYA's director of health services. *Id.* at ¶ 8.

At issue here is Plaintiffs' first claim, a Section 1983 claim levied against every individual defendant in their individual capacity. *Id.* at 7-14. Plaintiffs allege that Defendants violated Plaintiffs' 14th Amendment rights to substantive due process. *Id.* Plaintiffs allege the individual Defendants, through a series of acts and omissions, "created the conditions at MacLaren under which Edwards's sexual abuse of Plaintiffs was possible . . . evinc[ing] deliberate indifference to Plaintiffs' right to be free from sexual conduct with Edwards." Compl. ¶ 93-98. Defendants argue Plaintiffs fail to state a claim for relief because Plaintiffs' allegations are time-barred. *Id.*[2]

## LEGAL STANDARD

Rule 12 permits defendants to move for the dismissal of an allegation because of plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[2] In their Reply, Defendants argue, for the first time, that Plaintiffs also fail to state a claim for supervisory liability under Section 1983. Because Defendants did not raise this argument in their opening brief, the Court declines to consider Defendants' supervisory argument at this time. *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012) (party waives argument raised for the first time in a reply).

"On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). To defeat a 12(b)(6) motion, a plaintiff must plead a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. To plead a facially plausible claim, a plaintiff must show merely "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 496 (9th Cir. 2019) (citing *Iqbal*, 556 U.S. at 679). When evaluating whether a plaintiff has stated a claim, the court cannot consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). The court instead asks only whether the complaint's factual allegations, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint that satisfies this standard is 'well-pleaded' and 'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Berk v. Choy*, 146 S. Ct. 546, 553 (2026) (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

Taking Plaintiffs' allegations as true, and drawing all reasonable inferences in their favor, Plaintiffs' Section 1983 claims are not time-barred. Section 1983 imposes liability on those who, under the color of state law, subject or cause the subjection of another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." It does not, however, contain a statute of limitations. Instead, Section 1983 borrows the general personal injury statute

of limitations from the forum state, including the forum state's law regarding equitable tolling, "except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) When Oregon is the forum state, the governing statute of limitations for a 1983 claim is O.R.S. § 12.110, which requires tort claims to be filed within two years of their accrual. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012). When a claim accrues while a plaintiff is a minor, the statute of limitations is tolled for "no more than five years" or until the minor turns 19, whichever comes first. O.R.S. § 12.160(1), (2).

A Section 1983 claim accrues "'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury,'" not "when the plaintiff suspects a legal wrong." *Bonneau*, 666 F.3d at 581 (quoting *Lukovsky v. City and Cnty. of S.F.*, 535 F.3d 1044, 1049 (9th Cir. 2008)). "An action ordinarily accrues on the date of injury." *Ward v. Westinghouse Can., Inc.*, 32 F.3d 1405, 1407 (9th Cir.1994). Factual inquiries determining precisely when a plaintiff became aware of their injury is generally a question for the jury. *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1160 (2025). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

The accrual of Section 1983 claims involving sexual abuse can be delayed by a plaintiff's vulnerability at the time of alleged incident, power imbalances between the plaintiff and defendant, and plaintiff's shame, humiliation, and guilt. *St. Clair*, 154 F.4th at 1160. In *St. Clair*, the court considered a 12(b)(6) motion attacking the timeliness of a Section 1983 claim involving sexual abuse by a sheriff's deputy. *Id.* at 1157-58. Plaintiff alleged that the deputy repeatedly

"took advantage of her addiction to methamphetamines and involvement in criminal activity to coerce her into . . . unwanted sexual conduct." *Id.* at 1156. Plaintiff alleged that due to her addiction, age, and coercion, "she only came to understand she had been harmed [years later] when she read a news article . . . detailing [the deputy's] inappropriate sexual conduct with other similarly situated women." *Id.* at 1157, 1160. The court held that the plaintiff alleged sufficient "evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing," noting "'what [the plaintiff] knew and when she knew it are questions of fact,' better left for a jury." *Id.* at 1160 (alteration in original) (quoting *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986)).

Defendants argue that Plaintiffs' claims in Counts I accrued at the time of Plaintiffs' alleged abuse. Mot. Dismiss 6. Plaintiffs' Section 1983 claims, however, do not seek relief for the injury of Edwards's abuse. Plaintiffs' alleged injury is the violation of their 14th Amendment substantive due process rights. Am Compl. 14-18. Plaintiffs' claims would, accordingly, accrue when Plaintiffs "knew or in the exercise of reasonable diligence should have known" of the violation of their rights and the cause of those violations.

The running of the statute of limitations is not apparent on the face of Plaintiffs' complaint—at this early stage, it is plausible that Plaintiffs only became aware of their constitutional injuries in the last two years. *St. Clair* is instructive here. Plaintiffs' circumstances are akin to that of the plaintiff in *St. Clair*. Like the plaintiff in *St. Clair*, all Plaintiffs here allege that they were repeatedly sexually abused by an authority figure while in a position of vulnerability; Plaintiffs as incarcerated youths and the *St. Clair* plaintiff as a criminally involved person addicted to drugs. Like the *St. Clair* plaintiff, J.M. experiences struggles with addiction. M.P., C.I., H.S., J.E., and J.L. experience mental health challenges, as did the *St. Clair* plaintiff.

7 – Opinion and Order

The instant Plaintiffs, like the *St. Clair* plaintiff, allege that they only became aware of their constitutional injury years after the fact. *See St. Clair*, 154 F.4th at 1160 (recognizing a "flexible" standard as to claim accrual in sex abuses cases). J.L. and J.E. present the most tenuous allegations of delayed discovery. The other four plaintiffs specifically allege they discovered their injuries within the last two years. J.L. alleges only that he discovered his injuries "recently." *Id.* at ¶ 64.  J.E. alleges only that he discovered his injuries "after seeing news about Edwards' decades-long abuse."  *Id.* at ¶ 81. It is unclear where "recently" falls in the decades since J.L. alleged abuse. Similarly, it is unclear when J.L. encountered news stories regarding Edwards' alleged victims. The law, however, does not require Plaintiffs plead with exact specificity. Accordingly, the Court must refrain from attempting to divine precisely when plaintiffs became aware of the specific constitutional injuries alleged here and their cause. *See Doe v. Reese*, No. 3:24-CV-02011-AB, 2026 WL 125380 at *3 (D. Or. Jan. 16, 2026) (denying a similar 12(b)(6) motion in light of plaintiff's vulnerability and the factual inquiry necessary to ascertain accrual).

Finally, Defendants argue that *Doe v. County of Josephine*, 2015 WL 2412181 (D. Or. 2015) "is highly analogous to the case at hand." Defs.' Mot. 4. The Court disagrees. In *Doe*, plaintiffs alleged that they were sexually abused by their probation officer two decades before filing their claims under Section 1983. Importantly, in that case, "plaintiffs admit that they knew that they had been abused by [their probation officer], and no plaintiff asserts that he did not know or realize that [the probation officer's] abuse caused him injury at the time." *Doe*, 2015 WL 2412181 at *2. In contrast, Plaintiffs here specifically allege that for a variety of reasons—age, vulnerability, the abuse occurred during a purported medical examination, assurances by OYA staff that the examinations were in fact medically necessary, etc.—they did not realize that they

had been abused or suffered any injury until decades later, when reports surfaced of Dr. Edwards's abuse and years of cover ups surrounding that abuse by OYA officials. At this stage, it is plausible that Plaintiffs only realized at that time that they had not merely been subjected to uncomfortable medical examinations but were victims of sexual abuse. In short, *Doe* does not support Defendants' arguments here.

## **CONCLUSION**

In Count I, Plaintiffs plead sufficient facts to state a claim for relief that is plausible on its face. Defendants' Motion to Dismiss, ECF No. 12, is DENIED.

IT IS SO ORDERED.

DATED this 14th day of April 2026.

   s/Michael J. McShane      
Michael McShane
United States District Judge
